Good morning. May it please the Court, Emily Mollio here for the Appellants. In this proceeding, the National Labor Relations Board sought and obtained a preliminary injunction against the Appellant Unions. The matter of this appeal, however, is not whether the preliminary injunction was proper or whether the Union's conduct didn't comply with the preliminary injunction. Rather, we're here to challenge the District Court's award of monetary compensatory consent sanctions for three reasons. Can you just tell us, are you telling us why the award was wrong? Is that what you're proceeding to? Yes. All right. I don't want to interrupt you. I'm sorry. So the first reason is procedural. The Appellants were denied a fair opportunity to prepare, to do discovery, to obtain and consider evidence, or even to know in reasonable advance of what is being argued. The second element is the scope, who got what and why. And the third issue is the sufficiency of the evidence. To obtain monetary sanctions, the Board must prove, by clear and convincing evidence, actual unavoidable losses approximately caused by the contempt. I'll let you proceed. I'm concerned with what the standard of proof ought to be when reviewing evidence on compensatory damages. And I'm also concerned with your issue on the evidence. But please proceed. Well, I will turn to the standard of proof. So the Ninth Circuit has not decided whether the standard of proof for determining the amount of compensatory damages should be by clear and convincing evidence or by the preponderance of the evidence. Appellants urge the Court to adopt a clear and convincing standard for the same reasons why the Supreme Court ruled that the clear and convincing standard must apply for the determination of the contempt, whether a party is in contempt. The same policy reasons would govern here. In particular, contempt is an extraordinary remedy. And there are unique pressures facing the trial judge, who is solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contemptuous conduct. In this context, the same pressures that the Supreme Court cautioned, that there should be temperance and dispassionate and impartial judiciary, would apply to setting the amount of the compensatory sanction. Well, I guess, you know, I know that you're challenging, you know, to the extent, you know, about the procedure. But I'm looking at what happened there. And if the district court seemed to thoroughly review the records, took testimony before issuing a contempt order, what specific additional, you know, I mean, you lost, okay, and no one ever really likes to lose. But what else did the district court have to do, other than rule in your favor? And that's not enough to say that you've got procedural defects. Well, there was testimony, but only on the finding of contempt, not on the setting the amount of the compensatory sanction. Were there a number of receipts and things such as that that were submitted to the Court? Yes. But those receipts, for example, included matters that predated and postdated the dates of contempt. They included- And the judge threw out the stuff that predated the contempt, didn't he? The judge issued no decisions on such matters. The receipts also included things such as uniforms for law enforcement officers, which, as we discussed in the brief, the appellants don't believe the law enforcement agencies could recover any compensatory contempt sanctions. But even so, there's no evidence in the record that any uniforms were damaged or in any other way needed to be replaced because of the contemptuous conduct. Well, I think your strongest arguments are the scope of the damages. But regarding the sufficiency of the evidence on the damages, I guess, you know, it's, you know, receipts, it goes to what weight you give them. But, you know, I'm having a hard time with your argument that there just was nothing in the evidence about very specific numbers were reached in that, you know, down to dollars and cents. So tell me, you know, you may not agree with it, but the fact that I think what Judge Collins is saying is there were receipts, there was evidence that came up with those exact numbers. It wasn't like someone said, hmm, I think about $75,000. I'm just going to round it off or for- Well, I believe that actually the district court, while it obtained all of these materials, many of them were constituted inadmissible hearsay and many of them were unauthenticated. The unions presented very real and substantive challenges and objections to- What's the inadmissible hearsay? For example, in setting the amount of or the reasonable rate for the attorney's fees for the board, they cited to a Wikipedia entry on, I think, the Laffey Matrix. That was the sole support for the rates that they were requesting to recover. There were declaration from- Well, anything would be hearsay then on if someone came in and says, I charge $350 an hour. Well, because that's what I always charge. Well, that person could attest to what their hourly rate is and that would not be hearsay. Well, it might be because it's based on what you charged that before. In this case, I charged it. In this case, I charged it. In that case, and all of that. Those were things that might-they could be hearsay under certain circumstances. I'm just not seeing-I'm not seeing the substance of that there's no evidence about the amounts. Well, there may be some evidence. I think the issue is rather that a lot of the evidence is very dubious or it would be junk evidence. But that's why you have triers of fact, because they listen to all of it and they decide what they believe and what they disbelieve. And then it goes to the weight that the trier of fact gives it. But that doesn't mean that there's no evidence. Well, in this case, though, it does not appear that the trier of fact gave weight to the objections that the appellant unions raised. You know, in this circuit, in the Jerry's Deli case, a contempt sanction was remanded back to the district court where the district court just dismissed the objections of the contemnor in a conclusory manner. Here, there isn't-the evidence from the transcripts of the testimony, the evidence of the statements of the district court do not reveal that they- that he took into consideration the union's objections. Well, why don't you talk about McComb and the scope of the damages in terms of which ones you think are not-that cannot be claimed by third parties? Yes. So the-in most cases, only the complaining party can obtain compensatory contempt sanctions. In a case like this where there's a federal agency who is the prevailing party in a contempt proceeding, the standing of the agency can extend somewhat beyond just the agency. However, the restrictions-it is-those are limited by what sort of remedial powers that agency has. I think we have a question. I think he's-are you sharing time with someone? No. You're using all the time? Yes, I am. Oh, okay. I see other people seated there, and I didn't know if they were getting nervous that you were using their time. Do you want to save some- I would like to save some time for rebuttal. How long do you want to save for rebuttal? Let's see, maybe four minutes. Okay. Go ahead. So-and so what you need to look at is what the powers the agency has. And here, the board's remedial powers, and particularly the board's remedial powers to award damages, financial-economic damages, are limited to the context of awarding such damages to aggrieved employees. So you're suggesting we ought to reverse as to the damages award to the law enforcement agencies and to BNSF. As well as EGT, the charging party, because the board can only obtain injunctive relief on behalf of a charging party. It has no authority to obtain financial damages. But EGT is a party, so it's not the same argument as to EGT, right?  Charging party does not have, in the underlying board proceedings, does not have party status in a 10-L or 10-J injunction. Rather, I believe EGT's position is that it sought amicus standing before the court, which is limited and for which there is authority in this circuit that amici, no matter how helpful or successful they are in the trial, court cannot recover attorney's fees. Didn't they suffer actual damages from the violation of the order, EGT? That, those damages, they have other, to the extent they incurred damages, those damages can be resolved through other mechanisms. Well, but it's not mutually exclusive. What case do you have to say that there's only one way you can cover damages? Well, it's not that there's only one way. It's that in contempt proceedings, the board standing as a complaining party can only extend to cover those that its remedial power extends to. And its remedial power does not extend to providing losses for damaged property, for example, for an employer. As the board held in Ironworkers Local 783, which is 316 NLRB 1306, the board admitted that it did not have the ability to award damages to an employer for property damages caused by picket line misconduct, and rather that that employer had to rely on state tort claims to obtain relief. Would you like to reserve the balance of your time for rebuttal? You're at three and a half minutes. Good morning. Good morning. May it please the court. My name is Casey Compton for the NLRB. This case is about the damages and fallout from the union's violent and unlawful picketing that took place in Longview, Washington, over the course of the summer of 2011. Now, notably, the unions do not contest the district court's adjudication of them to be in contempt of the district court's temporary restraining order and preliminary injunction order, both of which issued in September of 2011. Rather, their complaint really deals with the power and the authority of the district court to compensate parties who were directly harmed by the union's consummation's conduct. Well, I think they, you know, I think probably the area that concerns me the most would be the contempt award for the non-party police departments and BNSF. You rely on McComb, I think, but I don't see that as being entirely opposite to the proposition that you're forwarding. Okay. Your Honor, I would submit that the district court did act within its discretion by awarding compensatory damages to these so-called parties, BNSF and law enforcement agencies. But how does that further the enforcement of the injunction? I mean, the police job, it's a little bit like that, you know, charging a murder victim's family for investigating the murder in a homicide. I mean, it's the police job to deal with what you call contumacious behavior or, you know, civil unrest or criminal acts or that sort of thing. I mean. Well, first, of course, courts have to have the authority to enforce their orders. And here the damages that were awarded were directly attributable, of course, to the union's contumacious conduct. I mean, these law enforcement agencies, and we're talking about several of them, were taken off their beats to come down to the port on several occasions and deal with the chaos that was going on at the time. And BNSF, of course, suffered damages in terms of broken trains. I mean, there was a train car that was toppled over. I mean, there was absolute chaos going on at the time. The district court had to do something about it so it issued the contempt orders. What is your best case? I'm sorry? What is your best case for awarding damages to third parties? Well, first I would say that damages are routinely issued to third parties in board contempt enforcement proceedings. Back pay, for instance, is routinely awarded to employees who, of course, are not often charging parties. Often it's the union that is the charging party in those cases when an employer is brought up on contempt. And back pay to employees is routinely ordered in those cases. But that's not, but isn't the language that the contempt sanctions are to be awarded to non-parties where doing so was directly necessary to enforce the injunction? There are sort of fallout of it, but that doesn't,  They suffer damages, but it's not, I mean, the cases where they afford back pay aren't the injunctions having to do with pay? Yes, but here. So it's really about the enforcement of the injunction. Right. And here the injunction was to stop the violent picketing that was taking place, which the unions, of course, refused to do on several occasions. The board, of course, is an agency charged with protecting the public interest. It's charged with protecting public rights. And in McComb, for instance, which Your Honor has mentioned, in that case, back in 1949, the Supreme Court upheld back pay again to employees that was sought by the Department of Labor because it was enforcing the Fair Labor Standards Act. Just as here, the board is trying to seek labor peace and end the labor unrest that was taking place in the summer of 2011. These damages were directly attributable to the union's failure to do that. Why shouldn't there be a separate lawsuit filed by the damaged parties to take care of that? Well, the unions do argue that EGT, for instance, as a charging party, could seek damages under Section 303 of the Labor Management Relations Act. First, I would submit that EGT doesn't have the power to do that because Section 303 is directly linked to Section 8b-4 of the Act, which deals with secondary conduct. Now, although the board certainly thought that the conduct here was prohibited secondary conduct and we argued as such, the district court disagreed or at least didn't find that. It put it off to another day, didn't grant us the 10-L injunction. So there's no 8b-4 finding. But, you know, do the police have a different argument than BNSF? I would think... They're not parties, right? Correct. They're not parties, but, again, they suffered actual damages as a result of the union's violent, contumacious picketing that they were trying to get under control here. But if we every time that the police have to come out to picketing, is every contempt citation going to be that the police get their damages? Is that what... Are you saying that that... Would that always be the case? I'm not sure that that would always be the case. I don't know that you have to go that far. I think that... But how do we draw the line? I mean, it's, you know, police officers... This is what police officers' jobs are, are to respond to violence, to crimes, to any of the above. And so when you start collecting for the police for a job that they're already paid to do, how, you know... You don't have a case exactly on point. No, I do. I'm sorry. I don't have a case exactly where law enforcement was given damages. On the other hand, of course, appellants don't have a case. I'll say they can't be. And, again, I would just find and ask this court to find that the reason that law enforcement and BNSF, who, again, is not a law enforcement agency, that these parties were given compensatory damages is because they suffered actual damages, and those damages were directly attributable to the union's failure to abide by the district court's temporary restraining order and injunction order. Were any of the people who actually caused the damage arrested and charged with criminal acts? Yes, Your Honor. Wouldn't that be the avenue then for them to get the restitution for the police department? Criminal charges that resulted? Your Honor, that's possible. But, again, you know, I'm here on behalf of the board, and the board, you know, acts on behalf of the public interest. And we would submit that these contempt damages are, again,  And the district court has to have the authority, you know, to enforce those orders. I mean, the district court gave the unions several chances to get themselves into line. And, you know, they simply failed to do that. And I'd like to just quickly touch on the sufficiency of the evidence, because I know the appellants have raised that. The appellants, you know, concede that there was testimony, of course, before the district court, as Your Honor mentioned, in the contempt adjudication proceedings. Now, that testimony was from various witnesses from the different law enforcement agencies, from BNSF, from EGT, who were all testifying and who were subject to cross-examination, of course, by appellants' counsel, who all testified as to the scene that they encountered when they went down to the port, you know, the actual property damage that they saw, the number of police officers who were needed, and how many hours they were on duty to try to get that situation under control. And that evidence itself, although it was in the contempt adjudication proceedings, that evidence itself goes a long way to establishing the amount of damages that the district court ultimately found. In addition to the testimony, of course, as Your Honor has pointed out, there are receipts, there are photographs, there are invoices, and the appellants, although they complain that they weren't allowed discovery from the district court, they really, I don't think they've pointed out any real defects with those invoices and receipts, other than to say that some of, you know, some of the amounts may have predated or postdated the actual contemptuous, consummationist conduct. Of course, the district court in its order noted that it had taken into account the union's objections, it had taken into account the, there was a witness declaration from EGT that was submitted that revised the totals of damages, that actually reduced what they were seeking. And the district court. By about $50,000. Yes, and the district court noted that it had taken that into account. So, I mean, basically, your argument is somewhat, goes to the questions I was asking appellants' counsel, that you're saying it really just sort of goes to the weight of what the trier of fact decided the damages were, and that was all before the trier of fact, and so there is evidence. Now, do we have to resolve the standard of review? I don't believe so, Your Honor. I mean, does it have to be by clear and convincing, or is it your position that whatever was there was enough, whatever? It is our, well, I don't think this court needs to resolve that. Of course, this court has not adopted a clear and convincing standard. What this court has said is that the damages awards by the district court have to bear, have to be reasonable and have to bear a strong relationship to the evidence. And here I would submit that under any standard, and certainly under the strong relationship standard, the evidence clearly establishes a strong relationship to the damages awards that were actually awarded. I mean, here the district court actually reduced what we were seeking, certainly, you know, out of caution. Even though the district court was having to act very quickly to get, you know, this out-of-control situation somewhat under control, it nonetheless reduced the damages that we sought, you know, and out of caution, you know, did that. So I would say this court doesn't need to go to the standard, under any standard, this evidence was sufficient. I would just like to sort of conclude by saying again, you know, the board is a public agency. We're charged with protecting the public interest. And it is somewhat ironic that appellants are arguing that the compensatory damages to third parties injured by its conduct should not be allowed. I mean, the NLRA was actually passed at a time when there was enormous investment. It may be ironic, but you don't have a case exactly on point. So, you know, I think it's a little bit more than ironic that they have, I mean, they have an opening there. And I mean, I think the argument obviously is because what the injunction is restraining or coercing employees of EGT general or any other person doing business in relation to EGT facility. And I mean, their argument is that the district court's contempt order to the police departments who responded to the picketers and to BNSF did not and could not help enforce the injunction. Rather, the award was entirely retrospective and compensatory. And there, you know, there is, it's, you know, and there isn't a case that says these type of damages are strictly allowable. But I would argue that these damages fit within the notion of contempt damages. That these parties suffer these direct losses. I mean, as the court pointed out itself, you know, we're not talking about lost profits or some sort of, you know, nebulous award. We're talking about damages that are actual, that were directly attributed to the violence that was going on. And it's, you know, this case is in line with the Kuykendall case from the Tenth Circuit, which we cite in our brief, where the Tenth Circuit found that the FTC, for instance, was charged by Congress with protecting consumers. And even though consumers obviously are not part of the FTC, that they should be in a contempt action, they should be awarded compensatory damages for the fraudulent, you know, telemarketing practices in that case that were going on. Similarly here, these third parties were directly harmed by the violence that was going on in the summer of 2011. We're not asking for anything more than the actual losses that they suffered. And the board, as an agency that is charged with trying to keep labor peace, trying to protect interstate commerce, which was obviously being directly impeded by the union's conduct, I think that the district court was well within its discretion when it awarded those damages. Are you saying that because the judge was saying, if you, the theory being, if you have to pay for the damage that you caused, you have to pay to have them go into a civil trial, maybe people will stop riding and stuff like that? Is that the argument you're trying to make? Well, I think, I mean, first of all, the damages that were awarded are just, they are compensatory. I mean, they go to the losses that were actually suffered. I do think that the district court was in a real quandary at the time. I mean, it ordered two, you know, a TRO and an injunction order. The unions were blatantly, you know, violating those, ignoring those. It was a totally chaotic situation. Well, it seems like they're responsible for them. But the question is, under this, can it be the scope, can this be the way that you collect them? I would argue, again, that because these damages were directly caused by the union's contumacious conduct and because the board is an agency seeking. Is Kuykendall exactly on point? Well, I would argue it's very close, Your Honor. I mean, in that case, again, there was. . . Is that the FTC? Yes. And it was collecting on the behalf of consumers? Consumers. And as part of the reasoning that tends as to why, because a similar argument was raised in that case, too, that these were. . . But didn't the permanent injunction there that the defendants had consented to contain enforcement provisions that, by their terms, allowed the FTC to collect on the behalf of consumers? That could be, Your Honor. But, again, the Tenth Circuit in that case, as part of its reasoning, noted that Congress gave the FTC the power to protect consumers. And as part of that power, you know, getting compensatory damages on behalf of consumers who were harmed by the injunction was part of the FTC's purpose. And I would argue similarly here that the board, again, is charged by Congress with protecting interstate commerce and the public interest,  by the district court's orders, fits directly within that rubric. Thank you for your argument. Unless panel members have additional questions, we've taken a little over your time, but thank you. Thank you, Your Honor. I would like to respond to a few points that were raised by the board. First, while true that the district court judge was concerned about ensuring compliance with his orders, there were options for the court that did not involve a rushed compensatory sanction, specifically a coercive sanction. The district court eventually did issue a prospective fine schedule, which would have been payable to the court and which — Well, okay, but that still doesn't quite answer the question. Because you have other options, it doesn't mean you can't do other — you know, if something's not mutually exclusive. So just because the court could have done it a different way doesn't strictly answer my question. Maybe you can respond to the Kuykendall case, or Kuykendall, or however you pronounce it, where they did allow the FTC to collect on behalf of consumers. Why is that case — why isn't that a good case for the appellees? Because what matters is what remedial powers Congress provided the agency. And in the FTC case, there were — I mean, the Kuykendall case, there were several matters. First, the circuit concluded that the appellants there waived their argument to challenge the award of compensatory damages to third parties. Second, the injunction that was in place in that case provided for financial remedies for consumers. And thus, it would make sense that the FTC's standing would extend to cover those consumers. Well, would this be a different case if the injunction in this case had said, anyone that violates this injunction is going to be responsible for police that have to come and enforce it and, you know, contumacious behavior or whatever. Would this be a different case if the language of the injunction said something like that? I believe that injunction would not be proper under Ninth Circuit authority where coercive sanctions must be payable to the court and not to non-parties or parties. Okay. And I think what's important to distinguish here is that the only cases that exist where the board's beyond that of an aggrieved employee receiving back or the only cases where the standing has exceeded beyond just the board is for an aggrieved employee who is seeking back pay. And that is because under the NLRA, the board is specifically empowered to award back pay to aggrieved employees. The board has no authority to award damages to employers like EGT or to other entities. It seems common sense if it's supposed to enforce an injunction, if people are responsible for everything that they do and that they know that if the police come out and have to handle this or if you damage other people's property, that that's certainly in mind, you know, it's a little bit in terms of discipline that you're not maybe going to do it. You know, maybe you'll comply if you're going to have to pay more for everyone that has to bring you into compliance. Well, the board's own law where there was in other cases alleged picket line misconduct, they informed the employer they need to go and file a tort action to recover those damages. So essentially, I'm logical. It's just they don't have the power. Exactly. Okay. All right. Well, I think your time is up. Thank you for your argument. This matter will stand submitted.
judges: Collins, Nelson, Callahan